

**Original filed 12/1/06**

1
2
3
4
5
6
7
8       NOT FOR CITATION

9       IN THE UNITED STATES DISTRICT COURT

10      FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  WINSLOW C. ROUSE            )    No. C 04-0276 JF (PR)
                               )
13          Petitioner,        )    ORDER DENYING PETITION
                               )    FOR WRIT OF HABEAS
14  vs.                        )    CORPUS
                               )
15  SHERRIF CHARLES PLUMMER, et )
    al.,                        )
16                             )
            Respondents.       )
17  _____)

18      Petitioner, proceeding pro se, filed the instant habeas corpus petition pursuant to

19  28 U.S.C. § 2254 challenging his conviction for owning and possessing a firearm in

20  violation of a restraining order.  Cal. Penal Code §12021(g)(2).  In its Order to Show

21  Cause, this Court found that the petition alleged fourteen cognizable claims for federal

22  habeas relief all of which were based on Petitioner's rights to due process and equal

23  protection: (1) an admitted conspiracy between the Alameda County District Attorney's

24  office and the Alameda Superior Court resulted in his wrongful conviction; (2) the court

25  commissioner wrongfully issued two injunctions against Petitioner without a stipulation

26  by the parties; (3) the court commissioner's order for injunctive relief against Petitioner

27  exceeded the court's jurisdiction; (4) the court commissioner granted injunctive relief

28  against Petitioner on the basis of insufficient evidence; (5) the court commissioner's order

granting injunctive relief after Petitioner's arrest but before his conviction was an abuse

of discretion; (6) the temporary restraining order against Petitioner did not prohibit him

from owning or possessing firearms and was impermissibly vague; (7) the court

commissioner's failure to admonish Petitioner regarding firearms, as required under Penal

Code § 12021(g)(2), was procedurally defective and exceeded the court's jurisdiction; (8)

Petitioner was arrested prior to the statutory deadline for the voluntary surrender of his

firearms; (9) the court failed to release Petitioner on his own recognizance and imposed

excessive bail for a misdemeanor offense; (10) the trial court improperly refused to grant

Petitioner's in limine motion to limit the introduction of perjured testimony; (11) the trial

court improperly failed to grant Petitioner's motion for acquittal based upon insufficient

evidence; (12) there were numerous instances of prosecutorial misconduct at trial; (13)

the superior court improperly denied Petitioner's request for appointed counsel on appeal;

and (14) the superior court improperly imposed a sentence after Petitioner's conviction of

four counts of a violation of Penal Code § 12021(g)(2) following Petitioner's plea of no

contest to five counts of Penal Code § 12021(g)(2).

The Court ordered Respondent to show cause why the petition should not be

granted.  Respondent has filed an answer and a memorandum of points and authorities.

Petitioner has filed a traverse.  Upon review of the briefs and the record, the Court

concludes that Petitioner is not entitled to habeas corpus relief on the claims presented

and will deny the petition.

## STATEMENT OF CASE

An Alameda Superior Court jury convicted Petitioner of possession of firearms

while subject to a domestic violence restraining order (Cal. Penal Code § 12021 (g)(2)).

On May 16, 2002, Petitioner received a sentence of six months in jail, five years of

supervised release, fifty-two sessions of anger management classes, and a fine.

Petitioner's direct appeal, which asserted claims two, five and six in the instant petition,

was denied on the merits on November 13, 2001.  Petitioner then filed a state habeas

petition that asserted claims one, three, four, five and eight through fourteen in the instant

1    petition, which was summarily denied on December 18, 2003.  Petitioner filed a state

2    habeas petition in the California Supreme Court, which was summarily denied on January

3    14, 2004.  The instant federal habeas petition was filed on January 20, 2004.

4                            **STATEMENT OF FACTS[1]**

5            On April 18, 2000, Jeannine Rouse Deer applied on behalf of herself and her

6    minor daughter for a restraining order against Petitioner.  Deer averred that Petitioner had

7    been stalking and harassing her and her daughter since 1992, and she detailed incidents

8    that occurred through April 17, 2000.  The superior court set a hearing for May 12, 2000,

9    and issued a temporary restraining order directing Petitioner to stay away from Deer and

10   her daughter.  On May 1, 2000, Petitioner filed a responsive declaration to Deer's

11   petition.

12           On May 12, 2000,  a hearing was held before a commissioner acting as a

13   temporary judge; both Deer and Petitioner appeared without counsel.  After being sworn,

14   Deer and Petitioner testified regarding Deer's allegations.  At the conclusion of the

15   hearing, the commissioner continued the matter to May 19, 2000.  The court informed the

16   parties that the temporary restraining order would be extended for an additional week.

17           Three days after the May 12, 2000, hearing, Petitioner was arrested for violating

18   the temporary restraining order.  At the continued hearing on May 19, 2000, the

19   commissioner took judicial notice that Petitioner was in custody.  The court then issued a

20   restraining order against Petitioner for a period of three years.

21           Approximately four months after his release from jail, Petitioner moved to vacate

22   the May 19, 2000, restraining order.  On October 20, 2000, a hearing was held on

23   Petitioner's motion; at that time Petitioner appeared with counsel but Deer did not appear.

24   After argument by Petitioner's counsel, the commissioner stated that before issuing his

25   decision, he wanted to read thoroughly Petitioner's declarations. Petitioner and his

26   counsel were directed to appear on November 9, 2000 for a continued hearing, but they

27

28        [1] A portion of the facts are taken from the Unpublished Opinion of the California Court of
     Appeal, First Appellate District, <u>Deer v. Rouse</u>, A094288 (November 13, 2001); Resp. Exh. 7.

failed to appear, the commissioner then denied Petitioner's motion to vacate the restraining order.

Petitioner was served with the restraining order, which contained a clause regarding relinquishment of weapons, on April 26, 2000. On May 15, 2000, a search of Petitioner's house revealed two rifles, two pistols and other gun accessories. Resp. Mem. at 6. Petitioner pled no contest to two misdemeanor charges of violating a restraining order and received a sentence of thirty days in jail, three years' informal probation, a $500 fine, and fifty weeks of anger management classes. Pet.'s Mem. at 61. Thereafter, Petitioner withdrew his earlier plea and went to trial. A jury convicted Petitioner of four misdemeanor charges of owning or possessing a firearm while being restrained by a protective order (Cal. Penal Code § 12021(g)(2)). The trial court sentenced Petitioner to 180 days in jail, five years of formal probation, a $662.50 fine, fifty-two weeks of anger management classes, and a requirement to submit to a urinalysis test upon request.

Petitioner appealed the judgment to the appellate department of the Alameda Superior Court, which affirmed the conviction. Petitioner then filed two successive writs of prohibition in the California Court of Appeal, both of which were denied. He then filed petitions for review with the California Supreme Court, which were denied. Petitioner filed habeas petitions in the California Court of Appeal and California Supreme Court, both of which summarily denied his claims. Resp. Exhs. 22, 23, 24.

## DISCUSSION

**A. Standard of Review**

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the provisions of that act apply to it. See Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499-1500 (9th Cir.), cert. denied, 522 U.S. 93 (1997) (justice and judicial economy are better served by applying the Act to cases filed after the enactment date.). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

1   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

2   unreasonable application of, clearly established Federal law, as determined by the

3   Supreme Court of the United States; or (2) resulted in a decision that was based on an

4   unreasonable determination of the facts in light of the evidence presented in the state

5   court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law

6   and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09

7   (2001), while the second prong applies to decisions based on factual determinations,

8   Miller-El v. Cockrell, 123 S.Ct. 1029, 1041 (2003).

9       A state court decision is "contrary to" Supreme Court authority, that is, falls under

10  the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

11  that reached by [the Supreme] Court on a question of law or if the state court decides a

12  case differently than [the Supreme] Court has on a set of materially indistinguishable

13  facts." Williams, 529 U.S. at 412-13.  A state court decision is an "unreasonable

14  application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if

15  it correctly identifies the governing legal principle from the Supreme Court's decisions

16  but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

17  The federal court on habeas review may not issue the writ "simply because that court

18  concludes in its independent judgment that the relevant state-court decision applied

19  clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the

20  application must be "objectively unreasonable" to support granting the writ. See id. at

21  409.

22      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

23  determination will not be overturned on factual grounds unless objectively unreasonable

24  in light of the evidence presented in the state court proceeding." Miller-El, 123 S.Ct. at

25  1041; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).  "Factual

26  determinations by state courts are presumed correct absent clear and convincing evidence

27  to the contrary." Miller-El, 123 S.Ct. at 1041.  This presumption is not altered by the fact

28  that the finding was made by a state court of appeals, rather than by a state trial court.

1   Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th

2   Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and

3   convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory

4   assertions will not do.  Id.

5   **B. Petitioner's Claims**

6       1. Petitioner's Conviction Was the Result of an Alleged Conspiracy

7       Petitioner alleges that his conviction was a result of a state-wide conspiracy by the

8   Alameda County District Attorney, the Alameda Superior Court, the California Court of

9   Appeal, and the California Supreme Court to allow the courts to conceal their long-term

10  practice of noncompliance with California Family Code § 6304.  This code section

11  requires that the court, when issuing a protective order, provide "notice that the

12  respondent is prohibited from owning, possessing, purchasing or receiving or attempting

13  to own, possess, purchase or receive a firearm."  Cal. Fam. Code § 6304.  Petitioner

14  claims that he did not receive either oral or written notice of th firearms prohibition, and

15  thus he cannot be prosecuted for possession of firearms.  He further alleges that the court

16  has a long history of not providing respondents with oral notice of the firearms

17  prohibition and that this failure to notify orally makes all of the orders of the court void.

18  Petition at 3-5.

19      Petitioner's conspiracy allegation is based on the following statement, made by the

20  prosecutor in his Answer to Petitioner's Motion to Dismiss Charges: "Finally, the

21  Defendant's argument proves too much.  If he is correct and the courts that issued the

22  restraining order were without jurisdiction to do so because they did not comply with the

23  letter of the Family Code, then a whole generation of restraining orders is presumably

24  void, or, at the very least, voidable.  This Court should not reach a decision that would

25  lead to that result."  Resp. Ex. 26 (People's Mem. of Law in Opposition to Def.'s Motion

26  to Dismiss Charges, Alameda Superior Court, People v. Rouse, Case No. 343698) at 9.

27      This statement is the only evidence presented by Petitioner in support of his

28  conspiracy allegation.  In order for this Court to grant habeas relief, petitioner must show

1  more than "[c]onclusory allegations which are not supported by a statement of specific

2  facts." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Moreover, there is a strong

3  presumption that state court judges both know and follow the law, and Petitioner fails to

4  provide sufficient evidence to overcome this presumption.  See Visciotti v. Woodford,

5  537 U.S. 19, 24 (2002) (use of imprecise terms in describing probability is not sufficient

6  to overcome the presumption that state courts know and follow the law).  Additionally, as

7  set forth below, the evidence presented at trial was such that a reasonable trier of fact

8  could find Petitioner guilty of the charged offense.  See Jackson v. Virginia, 443 U.S.

9  307, 319 (1979).

10      Because Petitioner has failed to present any evidence that his conviction was the

11  result of a conspiracy between the prosecutor and California courts, the state courts'

12  denial of this claim was not contrary to, or an unreasonable application of, clearly

13  established Supreme Court law, nor was it an unreasonable determination of the facts in

14  light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

15          2.  The Superior Court Commissioner Presided Over Petitioner's Case Without
              His Consent

16      Petitioner next claims that the restraining order, which is the underlying cause of

17  his conviction, should not have issued because neither he nor the requesting party gave

18  the requisite consent for the case to be heard by a superior court commissioner.  However,

19  because Petitioner is not "in custody" as a result of the underlying restraining order, he

20  cannot now challenge the validity of that order  A district court may "entertain a petition

21  only on behalf of a person "in custody pursuant to the judgment of a state court."  28

22  U.S.C. § 2254(a).  Petitioner currently is on probation and in "constructive custody" due

23  to his criminal conviction for violating the terms of the restraining order, and thus the

24  Court may only consider challenges to his criminal conviction.  In addition, the Court has

25  previously rejected Petitioner's habeas corpus petitions challenging the validity of the

26  restraining orders against him on the ground that he was not "in custody" for purposes of

27  § 2254.  See Rouse v. Chen, 2002 U.S. Dist. LEXIS 773, *2-3 (N.D. Cal. 2002); Resp.

28

1   Exh. 28 (Order Dismissing Request for Entry of Default Judgment and Petition for

2   Habeas Corpus, 4/2/02) and Resp. Exh. 35 (Order of Dismissal,  3/31/03); see also Jones

3   v. McKibben, 1994 WL 62105 (because plaintiff was in custody on a charge of spousal

4   abuse rather then on account of the restraining order he could not challenge the

5   restraining order through 28 U.S.C. § 2254(a)).

6          However, even assuming that Petitioner could challenge the validity of the

7   restraining order, his claim would fail on the merits.  Respondent correctly asserts that

8   Petitioner effectively stipulated to having the Commissioner preside over the case by

9   making a regular appearance before the commissioner.  See Resp. Mem. at 12.  The Ninth

10  Circuit has held that "a valid stipulation for purposes of California's constitutional

11  provision may arise as a result of the conduct of the parties."  Horton v. Mayle, 408 F.3d

12  570, 577 (9th Cir. 2005) (Even though defendant did not formally stipulate to having his

13  case heard by a commissioner his appearance without objection before the commissioner

14  was found to be a valid stipulation).  Petitioner, an experienced paralegal and former

15  court clerk, went to a courtroom that had the commissioner's name on the sign and

16  information about the proceedings on the court calendar, and then, without objection,

17  presented his case to the Commissioner.  Resp. Exh. 1-A (Reporter's Transcript on

18  Appeal) at 256; see also Resp. Exh. 5 (Reporter's Transcript of Temporary Restraining

19  Order Hearing) at 1-29.  At trial the commissioner testified that, although he was unclear

20  whether or not written consent was obtained, the parties appeared before him without

21  objection.  Id.  Given this evidence, it was not unreasonable for the state courts to infer

22  that Petitioner consented to proceeding before the Commissioner based upon his actions.

23         The Court of Appeal found that "the parties consented to having the commissioner

24  act as a temporary judge." Resp. Exh. 7 at 4.  This  determination was not contrary to, or

25  an unreasonable application of, federal law as established by the Supreme Court, nor was

26  the decision an unreasonable determination of the facts in light of the evidence presented.

27  28 U.S.C. §2254(d)(1), (2).

28  \\\

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Rouse276den

3.  Jurisdiction of Court To Issue a Mutual Restraining Order

Petitioner next alleges that the restraining order was void and exceeded the court's jurisdiction.  He claims that because he had a restraining order against Deer at the same time she sought a restraining order against him, the restraining order against him should not have been granted because Deer had "unclean hands."  Petition at 8, Pet's Traverse at 34.

Petitioner cites no authority holding that two parties cannot obtain restraining orders against each other.  A court can issue mutual restraining orders if both parties personally appear, each party presents written evidence of abuse or domestic violence, and the court makes detailed findings of fact indicating that both parties acted primarily as aggressors and that neither party acted primarily in self-defense.  See Cal. Fam. Code § 6305.  Accordingly, Petitioner has not established that the state court exceeded its jurisdiction or violated Petitioner's right to due process.  Moreover, as set forth above, because Petitioner is not "in custody" as a result of the underlying restraining order, he cannot now challenge the validity of that order.

Because the state court was not precluded from granting mutual restraining orders, the decision to grant a restraining order against Petitioner was not contrary to, or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §2254 (d)(1),(2).

4.  Sufficiency of Evidence to Support the Issuance of a Restraining Order

Petitioner alleges that because there was insufficient evidence of "past acts of violence or abuse" on his part to support the issuance of a restraining order, the order exceeded the court's jurisdiction and violated due process.  Petition at 9-10, Traverse at 39.

Petitioner cites California Family Code § 6300, which states that a restraining order may issue where an affidavit shows "reasonable proof of a past act or acts of abuse."  For purposes of domestic restraining orders, the California legislature has defined "abuse" as "any behavior that has been or could be enjoined pursuant to section

1   6320." Cal. Fam. Code § 6320(d).  This section authorizes the court to issue a restraining

2   order enjoining a party from, among other things, "stalking, threatening, harassing,

3   telephoning, contacting, either directly or indirectly, by mail or otherwise, coming within

4   a specified distance of, or disturbing the peace of" the party seeking the restraining order.

5   Cal. Fam. Code § 6320.  In her request for a restraining order, Deer said that Petitioner

6   made her and her daughter "afraid of physical or emotional harm," "stalked" her and her

7   daughter, and attempted to get custody of her daughter through various harassing

8   methods.  Resp. Exh. 3 (Application and Declaration for Order by Jeannine Rouse Deer).

9   Deer's allegations, taken together with Petitioner's history, were sufficient grounds for

10   the superior court to issue the restraining order.  Moreover, as set forth above, because

11   Petitioner is not in custody based upon the restraining order at issue he is not "in custody"

12   for purposes of 28 U.S.C. § 2254(a).

13       Accordingly, the state court's decision to grant the restraining order against

14   Petitioner was not contrary to, or an unreasonable application of clearly established

15   federal law, nor was it an unreasonable determination of the facts in light of the evidence

16   presented.  28 U.S.C. § 2254 (d)(1),(2).

17       5.  <u>Evidence Reviewed to Determine Whether to Issue the Restraining Order</u>

18       Next, Petitioner claims that the state court issued the permanent restraining order

19   based on his arrest for violating the temporary restraining order ("TRO"), and that this

20   violated his rights to a presumption of innocence, equal protection, and due process.

21   Petition at 11, Traverse at 41.  At the end of the initial TRO hearing on May 12, 2000, the

22   superior court stated that Petitioner's claim that the accusations against him by Ms. Deer

23   were untrue was "a concern to the court."  The court noted that "there's a great deal of

24   material that I need to further review," and continued the matter for one week.  The court

25   did not specify what material it would review.  Resp. Exh. 5 (Reporter's Transcript "RT"

26   of hearings on 5/12/2000; 5/18/2000; 10/20/2000) at 17.

27       At the next hearing on May 19, 2000, the court took judicial notice of the fact that

28   Petitioner had been arrested for violating the TRO as "additional evidence" in reviewing

the case.  Resp. Exh. 5 at 19.  The court based its decision to grant the restraining order

on all of the evidence presented and not just Petitioner's arrest.  Furthermore, issuance of

a restraining order requires only "reasonable proof," not proof beyond a reasonable doubt.

Cal. Fam. Code § 6300.  Additionally, Petitioner is not in custody based upon the

restraining order, and thus not "in custody" for purposes of 28 U.S.C. § 2254(a).

Accordingly, the state court's decision to grant the restraining order against

Petitioner was not contrary to, or an unreasonable application of clearly established

federal law, nor was it an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d)(1)(2).

6.  Vagueness of Temporary Restraining Order's Prohibition On Owning Or
Possessing Firearms

Next, Petitioner maintains that the wording of the restraining order was

impermissibly vague and void on its face because it contained conflicting language about

whether he could possess firearms.  Petitioner concedes that the restraining order

contained the following language: "[t]he restrained person is ordered to give up any

firearm in or subject to his or her immediate possession or control within [] 48 hours after

service of this order.  Any firearms should be surrendered to the control of local law

enforcement."  Pet.'s Memorandum in Support of Petition at 22-23; Resp. Exh. 4 at 2

(April 18, 2000 Temporary Restraining Order, "Firearm Restriction").  He also

acknowledges that the order contained a "notice regarding firearms" stating, "[a]t the

hearing on this matter, the court has the authority to order that the person subject to these

orders relinquish any firearms and not own or possess or purchase any firearms during the

period of the restraining order."  Pet.'s Mem. at 22-23; Resp. Exh. 4 at 4.  Petitioner

claims that these two provisions created a conflict as to whether a further order of the

court was necessary before he was required to surrender his firearms and, thus, the order

was vague.

Petitioner contends that the language of the criminal statute under which he

ultimately was convicted and the language of the restraining order were in conflict,

rendering the restraining order vague. Cal. Penal Code § 12021(g)(2) prohibits "own[ing] or possess[ing]' a firearm, while the 'notice regarding firearms' section of the restraining order prohibited 'purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining" a firearm. Pet. Mem. at 24-25. The "firearm restriction" section of the restraining order required Petitioner to "give up any firearm in or subject to his or her immediate possession or control." Resp. Exh. 13 (June 3, 1999 Restraining Order).

To avoid constitutional vagueness, a statute or ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. Vlasak v. Superior Court of California, 329 F.3d 683, 688-90 (9th Cir. 2003). The California Court of Appeal rejected Petitioner's vagueness claim, holding:

> That the firearm prohibition does not specifically require Rouse to relinquish any firearms he already possessed or owned when the order was issued does not render the provision impermissibly vague. The firearm restriction prohibits the purchase and receipt of firearms and alerts Rouse to the possibility that his possession of a firearm while he is subject to the restraining order may be a felony under federal law. [Cititation.] Thus, the firearm provision "does not forbid conduct in terms so vague that persons of common intelligence must guess at its meaning and application." [Citation.] Resp. Ex. 7 at 3-4.

As to Petitioner's claim that he did not have the requisite notice to show that he knew that he was prohibited from owning or possessing a firearm under Cal. Penal Code § 12021(g)(2), the jury resolved this factual question against him. The evidence in the record established that the firearm restriction in the restraining order unambiguously directed Petitioner to give up his firearms within forty-eight hours. Deputy Kilgore informed Petitioner that he had to turn over his firearms when he served the TRO; Inspector Connor confirmed that on May 12, 2000, Commissioner Houghton told the audience in the courtroom, including Petitioner, that if the TRO had a firearms provision, the restrained person had to surrender his weapons and that the failure to do so would be

1  a violation of the Penal Code; and Petitioner was familiar with the firearm provision
2  from his prior restraining orders.  Resp. Exh. 1-A at 85-86, 114. (Reporter's Transcript
3  "RT" at trial)

4          The jury rejected Petitioner's claim that he did not understand that the TRO
5  required him to surrender his firearms.  The state courts' denial of relief on this claim
6  was not contrary to, or an unreasonable application of clearly established federal law, nor
7  was it an unreasonable determination of the facts in light of the evidence presented.  28
8  U.S.C. § 2254 (d)(1),(2).

9          7.  Oral Notice of Firearms Restriction

10         Petitioner maintains that the state court issued the restraining order without
11 providing oral notice of the firearms restriction, which exceeded the court's jurisdiction
12 and violated due process.  He also contends that because the restraining order was
13 invalid due to the lack of oral notice, there is insufficient evidence of every element of
14 the offense pursuant to Cal. Penal Code § 12021(g)(2).  Petition at 14.

15         Petitioner refers to Cal. Fam. Code §6304, stating that when the court issues a
16 protective order at a hearing where both parties are present, the court must inform them
17 of the terms or the order, including that the restrained party is prohibited from owning,
18 possessing, purchasing or receiving a firearm, and the associated penalty for such
19 violation.  Petitioner notes that the prosecutor stipulated that Commissoner Houghton,
20 who presided over the case, did not specifically advise Petitioner of the firearm
21 restriction.  However, that stipulation only covered the time period on May 12, 2000, in
22 which Petitioner's individual case was heard.  As noted above, it was the commissioner's
23 practice when he took the bench to admonish the *entire audience* that those who were
24 subject to restraining orders with firearms restrictions must comply, that their weapons
25 were to be surrendered, and that the failure to do so was a violation of the Penal Code.
26 Resp. Exh. 5 (RT) at 83, 85, 86, 87, 114.  The District Attorney Inspector testified at trial
27 that he saw both Petitioner and Ms. Deer in the courtroom during the Commissioner's
28 initial statements.  Id. (RT) at 80-81.  Thus, because both parties were present and

1   informed of the terms of the order during court, there was sufficient evidence to support

2   a finding that Petitioner was provided sufficient notice of the firearms restriction.

3       A federal court reviewing collaterally a state court conviction does not determine

4   whether it is satisfied that the evidence established guilt beyond a reasonable doubt.

5   Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).

6   The federal court determines only whether, after viewing the evidence in the light most

7   favorable to the prosecution, any rational trier of fact could have found the essential

8   elements of the crime beyond a reasonable doubt.  See id. (quoting Jackson v. Virginia ,

9   443 U.S. 307, 319, (1979)).  Only if no rational trier of fact could have found proof of

10  guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324;

11  Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended,

12  768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S.

13  1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S.

14  838 (1984).  As set forth above, Petitioner's claim of insufficient evidence to support the

15  restraining order is without merit.  See Supra at 10.

16      Accordingly, the state court's determination that Petitioner received oral notice of

17  the firearm restriction and that there was sufficient evidence to support his conviction

18  was not contrary to, or an unreasonable application of clearly established federal law, nor

19  was it an unreasonable determination of the facts in light of the evidence presented.  28

20  U.S.C. § 2254 (d)(1),(2).

21      8. Petitioner's Arrest Prior to the Statutory Deadline for Voluntary
            Surrender of Firearms

22
23      Petitioner next alleges that there was insufficient evidence to support his

24  conviction because he was arrested less than forty-eight hours after the restraining order
    was issued, and that he voluntarily complied with the order.

25
26      The superior court issued the TRO on April 18, 2000, and reissued it at the hearing

27  on Friday, May 12, 2000.  Petitioner cites to California Code of Civil Procedure § 10,
    which states, "[h]olidays within the meaning of this code are every Sunday..."  He asserts

28

1  that by his calculation he had until the end of the day on Monday, May 15, 2000, to turn
2  in his firearms.  He was arrested at 10:15 a.m. on May 15, 2000.  Petitioner maintains that
3  he voluntarily surrendered his weapons when the police arrived with a search warrant.
4  Petition at 37.

5       When Petitioner's counsel moved for an acquittal based upon this "Sunday holiday
6  rule," the trial court stated that "it's my understanding that the Hayward Police
7  Department is open 24 hours a day.  To be in complete compliance, he should have turned
8  the guns in within 48 hours."  Resp. Exh. 5 (RT) at 428.  Although it recognized that there
9  was conflicting statutory authority, the court concluded that, "my ruling is based on the
10 fact that if the Defendant legitimately felt that this (not turning in the guns within 48
11 hours rather than looking at the requirement in terms of days) [that] would relate back to
12 the knowledge or intent issue."  Id. at 432.  When Petitioner's attorney argued that
13 Petitioner should get the benefit of the Sunday holiday rule, the court said, "I do not think
14 it's legally appropriate in this particular situation."  Id. at 347.  The court discussed the
15 legislative intent and public safety in interpreting the 48-hour time period for turning in
16 firearms. The court found that Congress intended that these "weapons be removed from
17 the hands of people that are restrained.  It doesn't say and shouldn't say that if it falls on a
18 Sunday that you should have another day."  Id. at 429-430.

19      Moreover, there was no evidence that Petitioner in fact relied on the Sunday
20 holiday rule in determining the deadline to give up his firearms.  A rational trier of fact
21 thus could have concluded that Petitioner did not "voluntarily comply" with the
22 restraining order.  The police had to obtain a search warrant to retrieve the firearms, and
23 petitioner gave them the key only to avoid forced entry.  Accordingly, the state court's
24 conclusion that Petitioner violated the restraining order by not surrendering his firearms
25 within the 48-hour period was not contrary to, or an unreasonable application of clearly
26 established federal law, nor was it an unreasonable determination of the facts in light of
27 the evidence presented.  28 U.S.C. § 2254 (d)(1),(2).

28 \\\

1        9. <u>Excessive Bail</u>

2        Petitioner next asserts that the state court set bail in an excessive amount and failed

3   to state reasons for the amount.  There is no absolute federal constitutional right to bail,

4   <u>Kelly v. Springett</u>, 527 F.2d 1090, 1093 (9th Cir. 1975); <u>Finetti v. Harris</u>, 609 F.2d 594,

5   597 (2nd Cir. 1979) and bail is not considered excessive merely because Petitioner is not

6   able to pay the bail.  <u>White v. Wilson</u>, 399 F.2d 596, 598 (9th Cir. 1968).  In evaluating

7   habeas petitions brought by state prisoners, a federal court does not conduct an appellate

8   review of a state court's exercise of judicial discretion in its grant or denial of bail.  <u>See</u>

9   <u>Young v. Hubbard</u>, 673 F.2d 132, 134 (5th Cir. 1982).  The scope of habeas corpus

10  review is limited to a test of the constitutionality of the denial.  <u>See id.</u>  Judgments of the

11  state courts, when attacked collaterally through a federal habeas corpus

12  petition, carry a presumption of regularity.  <u>See</u> <u>Finetti</u>, 609 F.2d at 600.

13       In addition, the grant or denial of bail is within the sound discretion of a state trial

14  court.  <u>Finetti v. Harris</u>, 609 F.2d at 600-601.  Petitioner originally was charged with one

15  felony and five misdemeanors involving illegal possession of firearms.  Resp Exh. 2-C,

16  Exh. B at 1.  When Petitioner's counsel argued that bail was excessive when set at

17  $110,000, the superior court responded, "I have imposed obviously a severe sentence, and

18  so I am going to set the bail in the amount of $110,000."  Traverse, Exh. 50 at 7).  In

19  addition the court noted that "the jury has convicted him [Rouse] of what I considered

20  before very serious charges.  I set the amount that I feel is a reasonable bail."  Traverse,

21  Exh. 50 at 7-8.

22       Petitioner's claim of excessive bail is not a constitutional basis for invalidating his

23  conviction.  The state court's determination and reasons for the amount of Petitioner's

24  bail was not contrary to, or an unreasonable application of clearly established federal law,

25  nor was it an unreasonable determination of the facts in light of the evidence presented.

26  28 U.S.C. § 2254 (d)(1),(2).

27  \\\

28  \\\

1      10. <u>Use of Improper Character Evidence at Trial</u>

2          Petitioner claims that the admission of improper "character" evidence, specifically

3  evidence of his prior restraining orders, violated his due process and equal protection

4  rights.  Petition at  2.  Petitioner contends that evidence relating to the prior restraining

5  orders was irrelevant to the current charges and was introduced only in order to prejudice

6  the jury against him.  Traverse at 67-68.

7          In order for a state court's evidentiary ruling to be subject to federal habeas review

8  that ruling must violate federal law, "either by infringing upon a specific federal

9  constitutional of statutory provision or by depriving the defendant of the fundamentally

10  fair trial guaranteed by due process."  <u>See</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984);

11  <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-920 (9th Cir. 1991); <u>Middleton v. Cupp</u>, 768

12  F.2d 1083, 1085 (9th Cir. 1985), <u>cert. denied,</u> 478 U.S. 1021 (1986).  In addition to the

13  error being "one of constitutional dimension" it must also be "not harmless."  <u>Dillard v.</u>

14  <u>Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir. 2001).  Harmless error is error that had "a substantial

15  and injurious effect" on the outcome of the case.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619

16  (1993).

17          Pursuant to California Evidence Code § 1101(b), the trial court admitted evidence

18  of Petitioner's prior restraining orders to show "whether [he] had knowledge of the

19  firearm restriction in the Deer order." Resp. Exh 1-B (RT) at 511. Defense counsel

20  conceded that the evidence was admissible for such purpose, but requested that the

21  evidence be limited to the prosecution's rebuttal.  Resp. Exh. 1-A (RT) at 2-12.  The trial

22  court issued a limiting instruction to the jury to consider this evidence only to show

23  Petitioner's knowledge.  Resp. Exh. 1-B (RT) at 511.  "Juries are presumed to follow a

24  court's instructions" with respect to the purposes for which evidence is admitted and

25  Petitioner does not rebut this presumption.  <u>See</u> <u>Aguilar v. Alexander</u>, 125 F.3d 815, 820

26  (9th Cir. 1997) (Jury presumed to follow instruction that evidence of defendant's

27  appearance before a federal grand jury to testify about the murder of two DEA agents was

28  to be used for purposes of showing a general plan rather than as evidence that defendant

1  dealt drugs or had a propensity to murder).

2       The evidence of the prior restraining orders was not improper character evidence,

3  and thus the admission of this evidence did not violate Petitioner's constitutional rights.

4  Even if the evidence was improperly used, Petitioner fails to show that this alleged error

5  had a "substantial and injurious effect" on the verdict.  Brecht, 507 U.S. at 623.

6  Petitioner admitted that "the TRO directed him to 'relinquish any and not own or possess

7  any firearms'" and that "the box [was] checked saying [he had] to give up [his] weapons

8  within 48 hours."  Resp. Exh. 1-B (RT) at 384, 411.  Because Petitioner's own admissions

9  were sufficient to convict him, any evidence of his prior restraining orders could not have

10 had a "substantial and injurious effect" on the outcome of the trial; thus, any error was

11 harmless.  Brecht, 507 U.S. at 623.

12      Accordingly, the admission of evidence of Petitioner's prior restraining orders to

13 show his knowledge of the firearms prohibition was in accordance with state law.  The

14 state court's determination was not contrary to, or an unreasonable application of, clearly

15 established federal law, nor was it based on an unreasonable determination of the facts in

16 light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1), (2).

17           11.  The Trial Court's Failure to Grant Petitioner's Motion for Acquittal

18      Next, Petitioner alleges that because the evidence presented at trial was insufficient

19 to sustain his conviction, and both "the prosecutor and the court made... admissions that

20 the written and oral admonishments required for conviction of Petitioner for [the]

21 violation... had not been given," the trial court erred in denying his motion for acquittal

22 pursuant to Cal. Penal Code § 1118.1.  Traverse at 19.

23      Petitioner misconstrues the alleged admissions by the prosecution and the trial

24 court.  Although the prosecution agreed that Commissioner Houghton did not individually

25 advise Petitioner of the firearm restriction, the Commissioner did generally advise all

26 persons in the courtroom, including Petitioner, about the prohibition on owning, buying,

27 obtaining, or possessing firearms.  Resp. Exh. 1-A (RT) at 249-51.  The prosecution

28 stipulated that, as the Commissioner testified earlier in the trial, the restraining order

1    stated that "the court has to order that the person subject to these orders relinquish any

2    firearms and not own or possess firearms during the period of time of the restraining

3    order."  Resp. Exh. 1-A (RT) at 253, 269.  As Respondent points out, the prosecution did

4    not stipulate that the restraining order did not prohibit Petitioner from owning or

5    possessing firearms.  Resp. Mem. at 17, fn. 13 (citing to Resp. Exh. 1-A (RT) at 269).

6        Even if these alleged admissions had occurred during trial, Petitioner is not entitled

7    to relief because, as set forth above,  there was sufficient evidence to support the jury's

8    verdict.  Evidence is sufficient when "any rational trier of fact could have found the

9    essential elements of the crime beyond a reasonable doubt" when "viewing the evidence

10   in the light most favorable to the prosecution."  <u>Jackson v. Virginia</u>, 442 U.S. 307, 319

11   (1979).

12       The evidence of Petitioner's prior restraining orders, which contained language

13   prohibiting the possession of firearms, alone would have been sufficient for a reasonable

14   trier of fact to find Petitioner guilty beyond a reasonable doubt.  Resp. Exhs. 12; 13 at 2;

15   14; 15; 16 at 2.  Accordingly, the trial court's denial of Petitioner's motion for acquittal

16   was not contrary to, or an unreasonable application of federal law, nor was it

17   unreasonable in light of the evidence presented at trial.  28 U.S.C. § 2254 (d)(1), (2).

18       12.  <u>Prosecutorial Misconduct</u>

19       Petitioner next alleges that the prosecutor committed more than thirty acts of

20   misconduct.  Only five of these alleged acts of misconduct are set forth with sufficient

21   particularity in the instant petition to enable this Court to make a determination on the

22   merits.  Petitioner claims that the prosecutor misstated the law, misstated the facts, made

23   impermissible statements of personal belief or opinion, and presented arguments based on

24   facts not in evidence.

25       The standard for granting habeas relief on a claim of prosecutorial misconduct is

26   that the prosecutor's conduct renders the trial "fundamentally unfair."  <u>See</u> <u>Darden v.</u>

27   <u>Wainwright</u>, 477 U.S. 168, 181 (1986); <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).  A

28   trial is "infected with unfairness," and habeas relief is warranted, when the prosecutor

1  makes improper remarks and these remarks resulted in "actual" prejudice.  Brecht v.

2  Abrahamson, 507 U.S. 619, 637-38 (1993) (citing United States v. Lane, 474 U.S. 438,

3  449 (1986)); Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).  Habeas relief is

4  available only if the error had a substantial and injurious effect or influence on the jury's

5  verdict.  Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996).  The proper focus is not

6  on the conduct of the prosecutor, but whether the trial was fair.  Smith v. Phillips, 455

7  U.S. at 219.

8        Petitioner claims that the prosecutor misstated the evidence when he told the jury

9  that a receipt book from a sporting goods store "notes the sales of weapons" even though

10 an investigator for the prosecutor testified that the receipt book was "blank."  Petition at

11 54.  Petitioner is not entitled to relief as to this statement because the statement did not

12 result in any prejudice.  Petitioner's defense was that he was unaware of the firearms

13 restriction.  The fact that Petitioner did or did not buy weapons is not probative of his

14 knowledge of the prohibition on firearms.  Even if ignorance of the prohibition on

15 firearms could be inferred from Petitioner's alleged purchase, this inference is not

16 sufficient to render the trial fundamentally unfair.  Evidence about Petitioner's purchase

17 of firearms is more likely to support an inference that Petitioner did not know about the

18 restriction, thereby bolstering his defense rather than prejudicing him.

19       Petitioner also claims that the prosecutor denied stipulating to the fact that the

20 commissioner did not give a firearms instruction and told the jury that the commissioner

21 did in fact give Petitioner an order to relinquish his firearms.  Petition at 55.  This claim is

22 without merit.  As noted above, the prosecutor did stipulate to the fact that the

23 Commissioner did not repeat the firearms restriction to Petitioner individually when

24 Petitioner appeared in front of the commissioner, but instead pointed out that the

25 commissioner gave a general admonishment about firearms to everyone in the courtroom

26 before the start of the calendar.  Resp. Mem. 23.  The prosecutor's statement did not deny

27 the earlier stipulation, but focused on the commissioner's general announcement

28 concerning the prohibition on firearms.  See Williams v. Borg, 139 F.3d 737, 744 (9th

1  Cir. 1998) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647 (1974)) ("A court should

2  not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging

3  meaning").  Even if the prosecutor intended the comments to refer to the parties' prior

4  stipulation, Petitioner has not shown that the statements had "a substantial and injurious

5  effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637.

6       Petitioner contends that the prosecutor misstated the law when he said that the

7  California Code of Civil Procedure "deals with days, not hours" when it discusses the

8  time frame for acts required by law.  <u>Id.</u> at 55-56.  This allegation does not amount to

9  misconduct.  The trial court overruled defense counsel's objection to this statement and

10  found that the Code of Civil Procedure did not apply to any of Petitioner's claims or

11  defenses.  Resp. Exh. 1-B (RT) at 500.  Because the trial court concluded that the Code of

12  Civil Procedure did not apply to Petitioner's case, any comment about the Code did not

13  "infect... the trial with unfairness."  <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).

14       Petitioner next asserts that the prosecutor told the jury to convict Petitioner and not

15  find him innocent because of "a legal technicality that is baseless," in his closing

16  argument.  Petition at 56 (quoting RT at 502).  The Court concludes that this claim is

17  without merit.  Resp. Exh. 1-B (RT) at 502, lines 13-14.  Given that defense counsel did

18  not raise an objection at trial this claim arguably was waived.  <u>See</u> <u>People v. Fosselman</u>,

19  33 Cal. 3d 572, 580-81 (1983) (Claims of prosecutorial misconduct must be objected to at

20  trial in order to be preserved upon appeal).  Even if it was not waived, Petitioner has not

21  established that the comment resulted in "actual" prejudice.  <u>See</u> <u>Brecht</u>, 507 U.S. at 637.

22       Finally, Petitioner alleges that the prosecutor based many of his arguments on facts

23  not in evidence and that he "expressed personal beliefs or opinions during trial as to the

24  Petitioner's guilt."  Petition at 58.  Petitioner does not allege any facts in support of either

25  of his contentions.  Without a showing of specific facts in the record, Petitioner's

26  conclusory claim is insufficient to warrant habeas relief.

27       Accordingly, the state courts' rejection of Petitioner's prosecutorial misconduct

28  claims was not contrary to, or an unreasonable application of federal law, nor was it based

1  on an unreasonable determination of the facts in light of the evidence presented.  28

2  U.S.C. § 2254(d)(1), (2).

3      13.  Failure to Appoint Appellate Counsel

4      Petitioner next contends that the denial of his request for appointed counsel on

5  appeal violated his equal protection and due process rights.  The Court concludes that

6  there is no factual basis to support Petitioner's claim and, therefore, this claim is without

7  merit.

8      Although Petitioner claims that he was denied appointed counsel on appeal, he was

9  represented on appeal by his trial counsel, Frank DeBenedetto.  Resp. Exh. 17 (Alameda

10 Superior Court Remittitur Order, People v. Rouse, Case No. 343698, Dec. 9, 2003) at 3.

11 Nothing in the record indicates whether DeBenedetto was appointed, retained, or

12 represented Petitioner pro bono on appeal.  Id.  Petitioner claims that DeBenedetto

13 represented him pro bono and that, because his appellate counsel also served as his trial

14 counsel, such representation prejudiced him.  Prejudice is established when "there is a

15 reasonable probability that, but for counsel's unprofessional errors, the result of the

16 proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 694

17 (1984).

18     Petitioner alleges he was prejudiced because his trial counsel also served as

19 appellate counsel and that this dual role meant that the attorney could not provide an

20 independent review of the record for ineffective assistance of counsel claims because

21 such claims would be against his own self-interest.  See Traverse at 78.  Petitioner offers

22 no evidence to support his allegation of prejudice, nor has he made any claim of

23 ineffective assistance of counsel at trial or on appeal.  Accordingly, the state courts'

24 denial of Petitioner's claim was not contrary to, or an unreasonable application of, federal

25 law, nor was it an unreasonable determination of the facts in light of the evidence

26 presented.  28 U.S.C. § 2254(d)(1), (2).

27 \\\

28 \\\

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14. <u>Discrepancy Between Petitioner's Sentence After Plea and Sentence After Trial</u>

Finally, Petitioner alleges that he was punished for choosing to go to trial because he received a harsher sentence after trial than he would have received had he accepted a plea bargain.  After Petitioner's initial "no contest" plea, he was sentenced to thirty days in jail, three years of informal probation, a $500 fine, and fifty-two weeks of anger management classes.  Thereafter, petitioner withdrew his plea, was convicted by a jury and sentenced to 180 days in jail, five years of formal probation, a $662.50 fine, the same fifty-two week anger management class, and a requirement that he submit to a urinalysis test upon request.  Petition at 61-63.

The difference between Petitioner's sentence after his "no contest" plea and the sentence he received after jury trial was not significant, nor was it the result of an impermissible sentencing scheme established by the court.  See <u>Gisby v. Blodgett</u>, 130 F.3d 365, 369-70 (9th Cir. 1997) (sentencing scheme that allows defendants who go to trial to receive sentence of death or life imprisonment without possibility of parole, while defendants who plead guilty can receive no more than life with possibility of parole, impermissibly penalizes defendants for exercising their Sixth Amendment right to jury trial).  Petitioner's sentence was not imposed in excess of state law or enhanced based on materially false or unreliable information.  See <u>Walker v. Endell</u>, 850 F.2d 470, 476 (9th Cir. 1987); <u>see also</u> <u>Marzano v. Kincheloe</u>, 915 F.2d 549, 552 (9th Cir. 1990); <u>United States v. Hanna</u>, 49 F.3d 572, 577 (9th Cir. 1995).  Petitioner's sentence was less than the maximum sentence allowed by statute.  <u>See</u> Cal. Pen. Code § 12021(g)(2) (the punishment for possessing a firearm when prohibited from doing so by a restraining order is "imprisonment in a county jail not exceeding one year,... a find not exceeding one thousand dollars... or by both that imprisonment and fine.").

Additionally, Petitioner's sentence was not "'grossly disproportionate' to the crime."  <u>See</u> <u>Ewing v. California</u>, 538 U.S. 11, 24-25 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Petitioner fails to establish that his sentence was imposed in retaliation for his choosing to go to trial.  <u>See</u>

1    Traverse at 81.  Nothing in the record triggers the presumption of vindictiveness as the

2    sentence was not reversed on appeal.   Nulph v. Cook, 333 F.3d 1052, 1058 (9th Cir.

3    2003) (applying North Carolina v. Pearce, 395 U.S. 711, 725-26 (1969) and Alabama v.

4    Smith, 490 U.S. 794, 799 (1989)) (Presumption of vindictiveness arose when Board of

5    Parole increased sentence by 45 years after petitioner successfully challenged his original

6    sentence).  When a presumption of vindictiveness arises, such as when a sentence is

7    significantly increased upon re-sentencing after a reversal or remand, the presumption can

8    be rebutted by the state by showing that there was an identifiable and objective reason for

9    increasing the sentence, such as misbehavior of the petitioner.  Nulph, 333 F.3d at 1057-

10   58.   Even if a presumption of vindictiveness existed in the Petitioner's case, there is

11   sufficient identifiable conduct to justify the increased sentence.  Nulph, 333 F.3d at 1057-

12   58.  In a letter to his ex-wife, who had a restraining order against him, Petitioner indicated

13   that he would not comply with the order.  Resp. Exh. 1-B (RT) at 373 (at trial Petitioner

14   talked about a letter he wrote to his ex-wife's son stating that "no restraining order in the

15   world can legally prevent [him] from suing her when she commits crimes and [his] cause

16   is just.").  There is no evidence that the difference between the sentence Petitioner

17   received after trial and the sentence that Petitioner initially received after his "no contest"

18   plea was the result of vindictiveness; the second sentence was constitutionally permissible

19   in all respects.

20          The Court concludes that because there is no evidence that Petitioner was

21   punished for choosing to go to trial, Petitioner's equal protection and due process rights

22   were not violated.  The state courts' denial of habeas relief on this claim was neither

23   contrary to, or an unreasonable application of, clearly established federal law, nor was it

24   based upon an unreasonable determination of the facts in light of the evidence presented at

25   trial.  28 U.S.C. § 2254(d)(1), (2).

26   \\\

27   \\\

28   \\\

**CONCLUSION**

Based upon the foregoing discussion, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: _ 12/1/06 _____

_____
JEREMY FOGEL
United States District Judge

1  A copy of this ruling was mailed to the following:

2

3  Winslow C. Rouse
   2170 Camino A. Los Cerros
   Menlo Park, CA  94025

4

5  Peggy S. Ruffra
   CA State Attorney's Office
6  455 Golden Gate Ave.
   Suite 11000
7  San Francisco, CA  94102-7004

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Rouse276den                    26